In re MITCHELL et al.

(District Court, E. D. New York. February 13, 1913.)

BANKRUPTCY (§ 136*)—WITHHELD ASSETS—RECOVERY.
Evidence *held* to justify an order requiring one of the members of a bankrupt firm to pay over or properly account for $1,000 drawn from the firm's assets and paid to his wife, or show cause why he should not be

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, &.Rep'r Indexes

punished for failure to do so, but insufficient to sustain a similar order against the other members of the firm.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Thomas H. Mitchell and Edward R. Mitchell, individually and as members of the firm of Thos. H. Mitchell & Brother. Petition to review an order requiring the bankrupts to pay over $1,000 as property belonging to the firm. Modified and affirmed.

Strauss & Singer, of New York City, for trustee.

Judson G. Wells, of New York City, for bankrupts.

CHATFIELD, District Judge. Application has been made to compel two bankrupts to pay over $1,000 obtained on or about August 15, 1911, by the wife of Thomas H. Mitchell, one of the bankrupts, on a check of the bankrupt firm, given to her that day to be cashed.

It appears that the mother of the two bankrupts who had advanced considerable money to them in order to carry on the business, sent a check dated August 14, 1911, drawn on a bank in the state of Pennsylvania, where she then was, for the sum of $1,000, to the bankrupts as a loan. This check was deposited and the firm's check for $1,000 drawn on the same bank, but the firm's check was not cashed until Thomas H. Mitchell obtained information by telegram that his mother's check was good.

Upon the 31st day of October, 1911, an involuntary petition was filed, and adjudication was had upon December 1, 1911. The transaction was therefore within four months of the date of the petition, but no claim has been made that the wife of the bankrupt Thomas H. Mitchell kept the $1,000, and the record shows that Thomas H. Mitchell testified previously that the money was turned over by her to him and used in paying various bills to firm creditors and in purchasing goods. The assets of the bankrupts were sold, and some of their books seem to have disappeared at the time of sale. The trustee alleges that the books in his possession contained no record showing payment of this $1,000. Whatever books there were went into possession of the trustee, and could not be produced by the bankrupts. One of the bankrupts, Edward R. Mitchell, returned to Pennsylvania after filing an answer to this application, and has been there since that time. The other one, Thomas H. Mitchell, was then living in Brooklyn; but his wife and children were not then here, and neither of the bankrupts ever appeared personally for examination upon this application. Their attorney appeared and interposed the answers which recite the foregoing, with a denial that the bankrupts now have any money or property, and alleging that Thomas H. Mitchell had used the sum in question for the firm's benefit.

The issues raised were sent to a special commissioner, who reports that on the reference parts of the testimony of the two bankrupts, at the first meeting of creditors, were read by the trustee to show that the $1,000 was in the hands of the bankrupts, and other parts read by the

bankrupts' attorney to show that Thomas H. Mitchell alone had the $1,000 and used it as stated.

The special commissioner states that Thomas H. Mitchell was unable to name a single person or amount so paid out, and the books of the firm were not introduced to substantiate his theory. The special commissioner concludes that a transaction like the telegram was so unusual as to indicate need for cash and could not be forgotten. He also concludes that, in ordinary course, payments would have been by check, and the method pursued shows some irregular motive.

. He gives no weight to the answering affidavit, which states two payments from the check in question for firm obligations. The testimony introduced also shows a payment to the judgment creditors whose levy precipitated bankruptcy, and the statement is made that, because of attachments and possible levies, it was unsafe for the bankrupts, even three months before bankruptcy, to put this money in the bank, and so they cashed the check as soon as possible. The special commissioner says:

"I do not believe he paid this money out to creditors, and, as this is the only explanation offered, I think the bankrupts have wholly failed to account for this sum of $1,000, and that the same has been and is now being withheld from the trustee in bankruptcy."

But if Thos. H. Mitchell's statement is to be believed in every respect except as to the one question of using the money to pay debts, why should the line be drawn there? The bankrupts, when examined at the first meeting, were trying to uphold a mortgage to their mother, given preferentially to secure some $7,000 in loans, of which this $1,000 was a part. But aside from this and from their admissions, there is nothing to show that Mrs. Thomas H. Mitchell has not retained the $1,000 which she obtained from the bank. If the statement of the bankrupts as to the firm's use of the money is not to be believed, and if the money was concealed at the time, then the story that this woman cashed the check and turned it over to the bankrupts is unworthy of belief and she should account therefor. She has never testified nor been proceeded against.

On either theory there is no evidence that Edward R. Mitchell at any time had the $1,000 or any part thereof, or that it was concealed for his benefit, and there is no testimony that the books or stock of the bankrupts, after August 15, 1911, showed the withdrawal or disappearance of such a sum for the purpose of secreting it, or for any other purpose.

The result is that, on the testimony, the special commissioner has decided that the testimony of Thomas H. Mitchell has not been worthy of belief, that the $1,000 was traced into the hands of him or his agent, i. e., his wife, and that for the failure to properly account therefor, or to appear and testify, he should be held to have failed to explain, by a credible story, the use made by him of the $1,000. To this extent the findings of the special commissioner should be upheld. There is grave doubt whether Thomas H. Mitchell has any funds left, and his conduct and failure to keep proper books showing such transactions as this one relating to the $1,000 will probably prevent a discharge, but

the entire record justifies an order that he pay over or properly account for the $1,000 in question, or show cause why he should not be punished for failure so to do.